

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-16-2005

# Miguel v. Comm Social Security

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-1014

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

## Recommended Citation

"Miguel v. Comm Social Security" (2005). *2005 Decisions.* Paper 1448.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/1448

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

<u>NOT PRECEDENTIAL</u>

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 04-1014

CAROLE RESERVE MIGUEL, O/B/O HARRY MIGUEL

v.

COMMISSIONER OF SOCIAL SECURITY

Carole Reserve Miguel,

Appellant

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

Dist. Court No. 01-CV-03229
District Judge: Dennis M. Cavanaugh

Argued November 2, 2004

Before: ALITO, FUENTES and COWEN, <u>Circuit Judges</u>.
(Opinion Filed: March 16, 2005                    )

JOEL M. SOLOW (Argued)
Freeman & Bass, P.A.
24 Commerce Street
Newark, NJ 07102
*Counsel for Appellant*

SHEENA BAR (Argued)
Christopher J. Cristie, U.S. Atty for D.N.J.

970 Broad Street, Suite 700

Newark, NJ 07102

*Counsel for Appellee*

---

OPINION OF THE COURT

---

<u>PER CURIAM</u>:

Carole R. Miguel appeals from an order affirming a decision by the Commissioner of Social Security ("the Commissioner") denying her husband's application for disability insurance benefits under Title II of the Social Security Act. Carole Miguel's now-deceased husband, Harry Miguel ("Miguel" or "the Claimant"), alleged that he had been disabled since January 8, 1999. Thus the period of alleged disability stretches from January 8, 1999, to the Claimant's death in January 23, 2001. Because we write for the parties only, we do not set out the facts.

**I.**

This Court, like the District Court, must accept the Commissioner's factual findings decision only if there is "substantial evidence" to support them. <u>Hartranft v. Apfel</u>, 181 F.3d 358, 360 (3d Cir. 1999) (citations omitted). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Id</u>. It is "more than a mere scintilla" but it need not be "large" or "considerable." <u>Id</u>. If substantial evidence exists, then the Commissioner's decision must

be affirmed — unless there was some error of law committed. Carole Miguel argues that the ALJ erred by declining to call for the testimony of a medical expert at the hearing. Her contention is examined de novo.

**II.**

There is substantial evidence to support the ALJ's finding that the Claimant had, until at least September 20, 2000, "the residual functional capacity for the full range of sedentary work." First, the reports of Drs. Gross, Vastesager, Blumenfeld, and Miller, are consistent with the finding. For example, Dr. Vastesaeger concluded that Miguel could sit or stand, walk one block, lift fifty pounds, carry forty pounds, and handle objects; and Dr. Blumenfeld stated that Miguel was able to occasionally lift up to twenty pounds, to frequently lift up to ten pounds, to stand or walk for about six hours in an eight hour workday, and to sit for about six hours in an eight hour workday. Second, the Claimant himself testified that he did not experience shortness of breath while sitting.

However, the record does not contain substantial evidence to support the ALJ's finding that the Claimant had the residual functional capacity for the full range of sedentary work from December 22, 2000 through January 23, 2001, the date of Miguel's death. The ALJ's June 2002 decision makes two points supporting his finding:

> (1) "I . . . cannot credit the testimony of [Carole Miguel] to the extent that it portrayed the claimant as having great difficulty with even the minimal exertion of sitting. . . . This testimony is in conflict with the claimant's own testimony that he had no difficulty sitting and it is also in conflict with the preponderance of the record evidence."

-3-

(2) "when the Claimant was re-admitted to the hospital on January 10, 2001 for the final time . . . his vital signs were stable, cardiac signs were normal, and his lungs were clear. His death on January 23, 2001, appears to have been sudden and unexpected."

T22.

The first point is almost wholly unfounded; there is no conflict between the testimony of Carole Miguel and the Claimant. The Claimant testified on September 20, 2000, about his health <u>on</u> and <u>before</u> that date. Carole Miguel, however, testified on June 21, 2002, and was specifically asked to testify only about the Claimant's health <u>after</u> September 20, 2000:

Q: Because your husband testified on September 20th, 2000, I'm just going to ask you questions for the period between September 20th and the date of his death, on January 23rd, 2001, okay?

A: Yes.

T296-97. That her testimony about the later period differs from her husband's testimony about the earlier period does not mean their statements are in conflict. To the contrary, the difference is wholly consistent with the view that Miguel's health declined dramatically after his testimony. Moreover, almost all of the record evidence that the ALJ refers to is prior to the relevant time period: none of the doctors' reports credited by the ALJ were made later than April 21, 2000, much less later than September 20, 2000.

The ALJ's second point is true but insubstantial. That the Claimant had stable vital signs, normal cardiac signs, and clear lungs on re-admission to the hospital on January 10, 2001, does not mean he could have been working in his old job. After all, if

-4-

he was re-admitted to the hospital he was thought too sick to go home. And even if we assume that Miguel's death was "sudden and unexpected" — perhaps an unwarranted assumption — this would not be substantial evidence that he had residual functional capacity in December 2000 and January 2001. Such facts and the inferences that can be drawn from them are still "a mere scintilla" of evidence.

## III.

The regulations do not require that a medical expert testify at the claimant's hearing. See 20 C.F.R. § 404.1529(b) ("At the administrative law judge hearing or Appeals Council level, the administrative law judge or the Appeals Council may ask for and consider the opinion of a medical advisor concerning whether your impairment(s) could reasonably be expected to produce your alleged symptoms.") (emphasis added). However, in this particular case, it would have been wise. Of the last thirty-three days of Miguel's life, twenty-four days were spent in Columbus Hospital, and five were spent in the intensive care unit. The ALJ does not cite substantial evidence that Miguel could have spent those thirty-three days working, and in the absence of a medical expert's opinion to that effect, it is hard to believe such evidence exists.

## IV.

For the reasons given above, the order of the District Court will be vacated and the cause will be remanded to the District Court for further proceedings consistent with this opinion.